UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION


RONDHA M. BROWN o/b/o                    CIVIL ACTION NO. 08-cv-1804
T.T.B. (XXX-XX-7486)

VERSUS

U.S. COMMISSIONER SOCIAL                 MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION


**MEMORANDUM RULING**

**Introduction**

Rondha Brown filed an application for SSI on behalf of her son, TTB, who suffers

from health problems.  TTB was born on March 20, 2004.  He was still an infant when the

application was filed in January 2005, and he was a four-year-old preschooler when ALJ

Osly F. Deramus issued his decision in April 2007.  The Appeals Council denied a request

for review, and Ms. Brown ("Plaintiff") filed this judicial appeal. Pursuant to 28 U.S.C. §

636(c) and the standing order of the district court governing social security cases, the action

was referred to the undersigned for decision and entry of judgment.  For the reasons that

follow, the Commissioner's decision to deny benefits will be affirmed.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports

the ALJ's determination, and (2) whether the decision comports with relevant legal

standards.  Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990).  "Substantial evidence is

more than a scintilla and less than a preponderance.  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination.  Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Three-Step Evaluation**

A three-step evaluation process is used to determine whether a child is disabled under the Act.  See Swist ex rel. Green v. Barnhart, 177 Fed. Appx. 414, 416 (5th Cir. 2006).  The first question is whether the child is engaged in substantial gainful activity, and the ALJ found that TTB was not. Tr. 21.  The second question is whether the child has an impairment that is "severe" within the meaning of the regulations.  The ALJ found that TTB suffers from speech delay and a left leg length discrepancy, impairments which are severe.  Tr. 21.  The third question is whether those impairments are medically or functionally equivalent in severity to the impairments listed in the disability regulations.  There is no contention that TTB's impairments met a listed impairment, so the question is whether the impairments functionally equal a listed impairment.

A decision on functional equivalence requires consideration of the child's limitations in six areas or domains. The domains are:

(1) acquiring and using information

(2) attending and completing tasks

(3) interacting and relating with others

(4) moving about and manipulating objects

(5) caring for your self

(6) health and physical well-being.

20 C.F.R. § 416.926a(b)(1).  The limitations imposed by an impairment are described in increasing levels of severity: none, moderate, marked and extreme. The child will be considered disabled if he has an extreme limitation in one domain or a marked limitation in two domains.  Section 416.926a(d).

Moderate is not specifically defined, but a marked limitation is defined as "more than moderate" but "less than extreme." A marked limitation interferes seriously with the child's ability to independently initiate, sustain or complete activities.  It is the equivalent of the functioning you would expect to find on standardized testing with scores that are at least two but less than three standard deviations below the mean.  Section 416.926a(e)(2).

An extreme limitation is "more than marked." A child has an extreme limitation when the impairment interferes very seriously with his ability to independently initiate, sustain or complete activities.  Extreme is the rating given to the worse limitations, but it does necessarily mean a total lack or loss of ability to function.  It is the equivalent of the functioning one would expect to find on standardized testing with scores that are at least three standard deviations below the mean.  Section 416.926a(e)(3).

**The Medical Evidence**

The medical evidence reviewed by the ALJ and discussed by the parties comes from three primary sources: Shriners Hospital records, LSU-HSC records, and consultative examination report from Dr. Catrell McCulloch.

A physical therapist at the Shriners Hospital noted in September 2005 that TTB was then 17 months old with a diagnosis of developmental delay.  TTB had just started walking, and he received therapy through Easter Seals.  The therapist reported that the child's walking "looks pretty good" but did exhibit some problems.  TTB's mother wanted to place the child in a brace, based on the recommendation of another therapist, but the Shriners therapist decided to hold off on using a brace.  Tr. 248.

Another report from the visit to Shriners stated that TTB had "normal appearing gait pattern as well as normal appearing function of both lower extremities and both upper extremities." Tr. 245.  The records indicate that Shriners made a mold in May 2006 for some sort of orthotic device for TTB's ankle.  That same month, a physician at Shriners wrote that TTB "did walk and run with a fairly typical gait for a child his age."  His mother expressed worry that he was not speaking like her other children.  The physician noted that the child was not very vocal and not as gregarious as his sister.  Tr. 240.

Dr. Rosario Riel-Romero at LSU-HSC saw the child in February 2006, when he was 22 months old.  She wrote that TTB could understand commands but said only one word, mama, he pointed to objects and grunted, and he cried whenever he was displeased.  He had

"very little verbal output."   On examination, the child played with a ball, followed commands, and was able to open his hands well and grasp objects really well.  He would "run after the ball without problems."   Dr. Riel-Romero's assessment was mild developmental delay, making progress, and she saw no motor handicap.  The child did exhibit speech delay, and she recommended continued speech therapy.  Tr. 250-51.

Dr. McCulloch conducted a consultative examination in December 2006, when the child was two and one-half years old.  There was a difference in length between TTB's right and left leg.  The child babbled and issued "unintelligible speech."  He wore a velcro brace on his left leg and had extra insole support.  Dr. McCulloch wrote that the child's speech "is currently 90 percent unintelligible" and he recommended an increase in the weekly speech therapy that the child was already receiving.  The difference in leg length seemed to cause "some motor deficits," so the physician recommended physical and occupational therapy. Tr. 257-60.

**Testimony**

Ms. Brown testified at the hearing –held when TTB was 27 months old – that the child was just learning to walk.  She said TTB did not use his thumbs, keeping them in his palms, which is reflected in some of the medical records.  Ms. Brown testified that she had been told once that the difference in the child's leg length was 1.5 inches, another specialist said it was two inches, and Shriners also said the difference was two inches.  (Dr. McCulloch's report states in one place that the difference is a quarter-inch, and in another place that it is one-half

inch).  Ms. Brown said the child was wearing braces on his hands to help him use his thumbs.

She estimated that he could travel only about 20 steps at a time on a good day.  Ms. Brown

testified that the child's twin sister speaks very clearly and can have a conversation with

someone, but TTB could say only a few words like mom, ball, or bye.  She estimated that his

vocabulary did not exceed seven words.  Tr. 329-49.

## ALJ's Findings

The ALJ reviewed the evidence and made findings that the child had no limitation in

the ability to care for himself and had "less than marked limitations" in the other five

domains.  Ms. Brown argues on appeal that the child had marked or greater limitations in the

domains of acquiring and using information, interacting and relating to others, and moving

about and manipulating objects.

## Acquiring and Using Information

In the domain of acquiring and using information, the ALJ noted that the regulations

provide that an older infant/toddler (age one to attainment of age three) without an

impairment should understand that words represent things, and that words are symbols or

names for toys, people, places, and activities.  The child should refer to himself and things

around him by pointing and eventually by naming.  The child should begin to respond to

increasingly complex instructions and questions, and to produce an increasing number of

words and grammatically correct simple sentences and questions.

Dr. McCulloch noted in his report that the child's speech was 90% unintelligible during his examination.  Other evidence showed that this child could name a few objects but had quite a limited vocabulary and made only single-word declarations.  Dr. McCulloch completed an assessment form and rated the limitation in this domain as "less than marked," secondary to speech delay.  Tr. 261.  The ALJ adopted that finding.  Tr. 24.

Plaintiff argues that the evidence compels a finding that child has at least a marked limitation, which requires the limitation that interferes seriously with the child's ability to independently initiate, sustain, or complete activities.  She suggests that the limitation might also rise to the extreme level, which requires that it interfere very seriously with his ability to independently initiate, sustain or complete activities.  The regulations attempt to make such decisions as objective as possible, that there is obviously a degree of judgment that must be exercised when assessing the degree of such limitations.

Dr. McCulloch had the benefit of actual examination and made a determination that the degree of limitation in this domain was less than marked.  Reasonable arguments could be made to the contrary, but the court finds that the child did have some limited vocabulary that provided substantial evidence to support the less than marked finding. The child's speech was quite limited, but he was able to understand a great deal more than he could say, and such understanding is also relevant in this domain.

**Interacting and Relating with Others**

The ALJ acknowledged that, with respect to interacting and relating with others, the regulations provide that a preschooler without an impairment should be able to socialize with children as well as adults.  He should be able to use words instead of actions to express himself and also be better able to share, show affection, and offer to help.  The child should be able to initiate and participate in conversations, using increasingly complex vocabulary and grammar, and speaking clearly enough that both familiar and unfamiliar listeners can understand what he says most of the time.  Tr. 25.

The ALJ once again relied on Dr. McCulloch's report to find a less than marked limitation, secondary to speech delay.  Tr. 26 and 261.  The undersigned cannot find substantial evidence to support that determination.  The child's lack of ability to communicate must be said to at least seriously interfere with his ability to socialize with others, express himself, participate in conversations, and perform other tasks that fall under this domain.  Thus, a finding of a marked limitation is required in this domain.

**Moving About and Manipulating Objects**

Plaintiff next challenges the ALJ finding of a less than marked limitation in the domain of moving about and manipulating objects.  The ALJ acknowledged that the regulations provide that a preschooler without an impairment should be able to walk and run with ease.  He should be able to climb stairs and playground equipment with little supervision.  He should be able to swing by himself and possibly start learning to ride a

tricycle.  He should be able to complete puzzles easily and build with an assortment of blocks.  Tr. 26.

The ALJ relied on Dr. McCulloch's report to find a less than marked limitation in this area.  Dr. McCullouch stated that the limitation was secondary to unequal leg length and the use of a brace.  Tr. 26-27, 262.  The undersigned finds that, though reasonable minds could perhaps differ, there is substantial evidence to support the ALJ's decision on this issue. There was evidence that Plaintiff definitely has a leg length discrepancy and that an orthotic device has been used, but there was also substantial evidence that the child was observed to have a normal gait and was able to chase a ball without difficulty.  There is, on balance, sufficient evidence that a reasonable mind could reach a determination of a less than marked limitation in this domain.

**Conclusion**

Plaintiff has demonstrated a marked limitation in one domain, but the child must have marked limitations in at least two domains (or one extreme limitation) to require a finding of disabled.  This is, as Dr. McCulloch and the ALJ acknowledged by their findings, a close case with the child having (in their opinions) slightly less than marked limitations in five domains.  The regulations require significantly greater abilities once the child passes the age of three, so if the lack of development continues, the child may by now have a significantly stronger case for disability.  On the current record, the Commissioner's determination is

supported by substantial evidence.  A judgment affirming the Commissioner's decision will be entered.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 28th day of December, 2009.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE